436 A.2d 1024

**COMMONWEALTH of Pennsylvania,**

v.

**Lawrence FANELLI, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed Oct. 30, 1981.

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

STRANAHAN, Judge:

This matter is an appeal from the judgment of sentence entered by The Court of Common Pleas of Philadelphia County against the appellant, Lawrence Fanelli, following his conviction for unauthorized use of an automobile.[1] The appellant contends, inter alia, that the lower court erred in denying his motion to dismiss under Pa.R.Crim.P. 1100(f) where he asserts, the Commonwealth failed to exercise due diligence in bringing him to trial within 180 days after the criminal complaint was filed as mandated by Pa.R.Crim.P. 1100(a)(2).[2] The Court agrees and, therefore, vacates the judgment of sentence and discharges the appellant.

The appellant was arrested on September 5, 1977, and charged with receiving stolen property and unauthorized use of an automobile. The same day, the criminal complaint in this matter was filed. Hence, the Commonwealth had until March 6, 1978 to bring the appellant to trial.

At the appellant's preliminary arraignment, bail was set at $2500.00. The appellant was unable to post bond.

* President Judge John Q. Stranahan of the Court of Common Pleas of Mercer County, Pennsylvania, is sitting by designation.

Judge Leonard Sugerman of the Court of Common Pleas of Chester County, Pennsylvania, is sitting by designation.

1. 18 Pa.C.S. 3928.

2. The appellant also contends that the evidence was insufficient to sustain the verdict. However, since the court finds that the appellant is entitled to be discharged because his trial was not timely, we need not consider that issue.

A preliminary hearing was held on September 29, 1977. As a result of that hearing, the appellant was ordered held for trial.

On October 20, 1977, the appellant filed a motion to quash the return of the magistrate's transcript on the basis that the Commonwealth had failed to establish a prima facie case of the appellant's guilt at the preliminary hearing.[3] The lower court granted the motion to quash and discharged the appellant on November 14, 1977.

On December 14, 1977, the Commonwealth filed a petition for reconsideration of the order granting the appellant's motion to quash. The same day and without a hearing, the lower court vacated its order granting the appellant's motion to quash pending reconsideration and entered a Rule on the appellant to show cause why the order granting his motion to quash should not be reversed.[4]

The appellant was never notified of the Commonwealth's request for reconsideration or the decision of the lower court to vacate its order granting the appellant's motion to quash pending reconsideration. The appellant's attorney, a public defender, was notified of the lower court's decision to vacate pending reconsideration and, as a result, the public defender filed an answer on December 22, 1977 opposing the Commonwealth's petition for reconsideration. The affidavit at-

3. Although captioned a motion to quash, the appellant's motion was, in reality, a petition for a writ of habeas corpus. *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975).

4. The lower court's decision to vacate its order granting the appellant's motion to quash pending reconsideration was wrong. Before a court can vacate or modify an order on reconsideration, all of the parties must have notice and the opportunity to be heard. *Commonwealth v. Colding*, 482 Pa. 112, Fn. 2, 393 A.2d 404, Fn. 2 (1978). The appellant was not given the opportunity to be heard before the lower court vacated its order granting the motion to quash pending reconsideration. Instead of vacating the order pending reconsideration, the lower court should have merely granted the Commonwealth's request for reconsideration. After each party had the opportunity to be heard, then the lower court should have decided either to affirm its order granting the motion to quash or vacate that order and deny the motion to quash. Unfortunately, the appellant has not raised this issue in his appeal. Hence, the court will not consider it.

tached to that answer, however, was not signed by the appellant. It was signed by the public defender.

After reconsideration, the lower court denied the appellant's motion to quash. Apparently, the lower court did so on January 31, 1978. The Court uses the term "apparently" because the only indication as to when the lower court finally denied the appellant's motion to quash is contained in the Commonwealth's and the appellant's briefs. The order denying the motion to quash, (if one exists), was not included in the record this Court received from the lower court.

The appellant was not notified of the lower court's decision, upon reconsideration, to deny his motion to quash.

The trial in the matter was scheduled for February 22, 1978. The Commonwealth did not notify the appellant of that trial date. The Commonwealth did, however, notify the public defender of the trial date.

The appellant failed to appear for trial on February 22, 1978. As a result, a bench warrant was issued for his arrest and the trial was rescheduled for March 10, 1978.

The Commonwealth filed a petition for an extension of time under Pa.R.Crim.P. 1100(c) on February 23, 1978. In support of that petition, the Commonwealth alleged that it had exercised due diligence in trying to bring the appellant to trial within the 180 days but it was prevented from doing so, first, by the appellant's filing of a motion to quash and, second, by the appellant's failure to appear for trial on February 22, 1978. The lower court granted the Commonwealth's petition and extended the time for commencement of the appellant's trial to March 13, 1978.

On March 10, 1978, the appellant again failed to appear for trial.

The Commonwealth filed a second petition for an extension of time on March 13, 1978.

On April 21, 1978, an investigator for the Commonwealth located the appellant at 2167 East Firth Street and took him into custody. The same day, the lower court held an evidentiary hearing on the Commonwealth's second petition for an

extension of time. At that hearing, the Commonwealth introduced the following evidence in support of its allegation that it had acted with due diligence:

A. On February 24, 1978, a letter was sent to the appellant's address as of November 14, 1977, 1831 East Orleans Street, Philadelphia, Pennsylvania, to notify him of the March 10, 1978 trial date.

B. On March 10, 1978, a telephone call was placed to 473–1016. There was no answer.

C. On April 4, 1978, the initial field visit was made to 1831 East Orleans Street by an investigator for the Commonwealth. The investigator found no one home at that address. While in the area, the investigator contacted an informant. The informant indicated that the appellant was living with a woman named Sharon in either the 2300 or 2400 block of Firth Street. The investigator went to the 2300 and 2400 blocks of Firth Street and interviewed approximately ten people. None of the individuals interviewed, however, knew of the appellant's whereabouts.

D. On April 18, 1978, a second field visit was made to 1831 East Orleans Street by an investigator for the Commonwealth. Again, the investigator found no one home at that address.

E. On April 20, 1978, an investigator for the Commonwealth contacted a second informant in the 1800 block of East Orleans Street. That informant indicated that the appellant was living at 2167 East Firth Street.

On the basis of this evidence and the procedural history of this case, the lower court found that the Commonwealth had exercised due diligence in attempting to locate the appellant. Therefore, the lower court extended the time for the commencement of the appellant's trial to May 20, 1978.

The appellant was tried on May 3, 1978, 238 days after the criminal complaint was filed.

The appellant contends that the Commonwealth failed to act with due diligence in attempting to locate him. Hence, he argues, the lower court erred in denying his motion to dismiss under Pa.R.Crim.P. 1100(f).

■ Pa.R.Crim.P. 1100(c) provides that a petition for an extension of time "shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth." To meet the standard of due diligence, the Commonwealth must take every step that it could reasonably be expected to take in trying to bring a defendant to trial within the prescribed period. *Commonwealth v. Brinton*, 275 Pa.Super. 311, 418 A.2d 737 (1980). The Commonwealth does not have to exhaust every conceivable avenue open to it to bring a defendant to trial within the prescribed period. *Commonwealth v. Brinton*, supra.

■ In the case at hand, the reason the appellant's trial was not commenced within the prescribed period was because of the appellant's failure to appear for trial on February 22, 1978.[5] Unlike the typical situation where a defendant fails to appear for trial, however, the appellant was not free on bail nor had he been released on his own recognizance. The appellant was at liberty because he had been discharged from custody when the charges against him were dismissed by the lower court for insufficient evidence.

Under these circumstances, the Court believes that the Commonwealth had a duty to locate and rearrest the appellant after the lower court denied the appellant's motion to quash after reconsideration.

After the appellant was discharged on November 14, 1977, the appellant was a free man. The appellant had no obligation to keep the Commonwealth appraised of his whereabouts. In essence, his legal status a that point was equivalent to that of an individual who had been discharged for lack of evidence after a preliminary hearing.

After the lower court denied the appellant's motion to quash on reconsideration, the appellant's legal status was equivalent to that of an individual who was discharged for

5. The Commonwealth does not contend that the time between the lower court's initial decision to grant the appellant's motion to quash and its decision, after reconsideration, to deny the motion to quash should be excluded from the 180 day period. Hence, the Court will not consider that issue at this time.

lack of evidence after a preliminary hearing and against whom a second criminal complaint has just been filed. Simply, both would have charges pending against them and their momentary freedom would be unrestricted.

Where an individual was discharged for lack of evidence after a preliminary hearing and against whom a second complaint has just been filed, the Commonwealth has a duty to rearrest that individual. See *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977). For purposes of Pa.R. Crim.P. 1100, that individual has no duty to keep the Commonwealth appraised of his whereabouts or to surrender himself to authorities.

Given that the legal status of that individual is equivalent to the appellant's legal status at the times in question, the same rules should apply. Hence, the Commonwealth had a duty to rearrest the appellant after the lower court denied his motion to quash on reconsideration.[6]

In this case, the Commonwealth did not attempt to locate the appellant until April 4, 1977, 41 days after the appellant initially failed to appear for trial and 22 days after the initial extension of the 180 day period expired. The Commonwealth did not even attempt to notify the appellant of February 22, 1978 trial date. The only action the Commonwealth took was to notify the public defender of the February 22, 1978 trial date. Under these circumstances, we think there is no question that the Commonwealth failed to exercise due diligence in attempting to bring the appellant to trial within the 180 day period.

Hence, the Court finds that the lower court's decision to grant the Commonwealth an extension of time was improper and, therefore, its decision to deny the appellant's motion to dismiss under Pa.R.Crim.P. 1100(f) was in error. As a

6. In all fairness, the Commonwealth had an even greater duty to arrest the appellant. When the lower court vacated its order granting the appellant's motion to quash and then, on reconsideration, denied that motion, the requirement that the appellant post bail of $2500.00 was reinstated. Hence, the appellant was not entitled to be at liberty until he posted bond. The Commonwealth, therefore, had two reasons why it had a duty to rearrest the appellant.

result, the judgment of sentence is vacated and the appellant is discharged.