514 A.2d 144

COMMONWEALTH of Pennsylvania, Appellee,

v.

Harold T. McKENDRICK, Appellant.

Superior Court of Pennsylvania.

Argued April 1, 1986.

Filed Aug. 18, 1986.

Jack M. Myers, Philadelphia, for appellant.

Elizabeth J. Chambers, Assistant District Attorney, Philadelphia, for Com., appellee.

Before McEWEN, OLSZEWSKI and KELLY, JJ.

OLSZEWSKI, Judge:

This appeal comes before us as a result of a first degree murder conviction returned by a jury against Harold T. McKendrick, appellant. After post-verdict motions were denied, appellant was sentenced to a term of life imprisonment. In the appeal sub judice, appellant raised numerous issues for our consideration. Most, however, deal with trial counsel's ineffectiveness. Although we find each claim meritless, we shall undertake a discussion of them all *seriatim.* First, a thorough recitation of the facts and procedure is necessary.

According to witnesses' testimony, on October 23, 1976, William Cheeseborough, the victim, and his girlfriend had a violent argument, resulting in Cheeseborough being ejected from the residence. This, however, did not stop Cheeseborough from yelling. Appellant entered the scene and knocked at the door to offer his assistance. Allan Holman told appellant that there was no trouble and "to leave the boy (meaning Cheeseborough) alone." At this time, appel-

lant announced that he was going to shoot the victim. A shot was fired at Cheeseborough's feet. He jumped back asking what that was for and was immediately shot at again. The second bullet was in the chest, piercing his heart and killing him. There were three potential eye-witnesses: Louisa Bennett, Annette Johnson, and Allan Holman. Neither woman knew appellant before the incident but both were able to identify him.

A warrant was issued on October 24 for the arrest of Harold McKendrick. He was not arrested, however, until 234 days later when he turned himself in. He was questioned by the police and denied knowledge of the shooting. At trial, his defense consisted of an alibi that he was present at a different location and that several other people had reason and motive to kill Cheeseborough.

Appellant's pre-trial counsel was Jack M. Myers, Esquire, at that time court-appointed, and now privately retained appellate counsel. Trial counsel was Benjamin Joseph, Esquire. After a decision on post-trial motions, he was permitted to withdraw and was replaced by David Sorin, Esquire. Mr. Sorin withdrew and Michael von Moschzisker, Esquire, was appointed to represent the appellant. A motion for a new trial and/or arrest of judgment was ultimately denied. Subsequently, Mr. von Moschzisker withdrew because of a change in employment and Michael McAlister, Esquire, was appointed to perfect an appeal to the Superior Court. He withdrew when Jack M. Myers, Esquire, once again took over.

## I.

We shall deal with appellant's last issue first. Appellant was sentenced on January 9, 1981 and filed a timely appeal on January 14, 1981. Oral argument was heard on April 1, 1986. As of this time, no lower court opinion had been filed. One was filed, however, on April 7, 1986, approximately five years and three months after sentencing.

Appellant cites the recent Pennsylvania Supreme Court case of *Commonwealth v. Hammer*, 508 Pa. 88, 494 A.2d 1054 (1985) which involved a similar incident with the same judge. Like the Supreme Court, we strongly condemn the failure of the trial judge to file an opinion within a reasonable time. Despite the lack of a prompt filing, this is not in itself sufficient grounds for a new trial. In addition, we note that the completeness of the lower court opinion was a great aid in our disposition of the issues.

## II.

■ Appellant argues that trial counsel's failure to object to comments [1] made by the judge during his instructions to the jury did not result in a waiver of that issue.

This situation is covered by Rule 1119(b) of the Criminal Rules of Procedure which states:

> (b) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.

Numerous cases have found issues waived if not objected to by relying on this rule. See, *Commonwealth v. Hilton*, 461 Pa. 93, 334 A.2d 648 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Waters*, 334 Pa.Super. 513, 483 A.2d 855 (1984). Appellant cites *Commonwealth v. Hammer, supra*, as an exception to the rule that no objection at trial does not preserve the issue on

---

1. In giving the voluntary and involuntary manslaughter instructions, the judge commented:

 I again address myself to the record, that the Court has expressed an opinion at this juncture due to the following things: number one, *it is an absurdity* —under the present state of Pennsylvania law, jurors have the power to return verdicts of either voluntary or involuntary manslaughter notwithstanding the absence of such evidence in the record ... But, on the other hand, this Court has expressed an opinion because it wants to avoid—its own personal opinion—one of two things: *it is an absurdity* under the law for a judge to instruct a jury on the law without telling them that, number one, that there is no evidence relevant to a particular crime in the case, even though they have every right to return those verdicts; ...

appeal. The specific exception raised in *Hammer* deals with instances of judicial intemperance. This exception, however, is not absolute.

We turn now to the merits of appellant's claim. In finding no error by the trial judge, we rely on *Commonwealth v. Cole*, 274 Pa.Super. 106, 417 A.2d 1276 (1979). This Court stated:

> When a defendant charged with murder requests a charge on voluntary manslaughter, the trial court may give its opinion on whether the facts show that the defendant committed voluntary manslaughter if the evidence supports the court's opinion, the court fully informs the jury of its power to return a verdict of guilty of voluntary manslaughter, regardless of whether the facts support that verdict, and if the court instructs that the jury is the finder of facts and is not bound to follow the court's opinion. *Commonwealth v. Scaramuzzino*, 485 Pa. 513, 403 A.2d 82 (1979) (plurality opinion) (citing cases).

Here, the trial judge had sufficient reasons to justify his comment. In addition, he informed the jury of its power to ignore his opinion and bring back a verdict of guilty to either voluntary or involuntary manslaughter. Because of this, there was no error in the instruction. *See also, Commonwealth v. Gaddy*, 468 Pa. 303, 362 A.2d 217 (1976).

## III.

Eight of appellant's arguments allege ineffective assistance of counsel on the part of Benjamin Joseph, Esquire. While each instance shall be addressed individually, the law and standard that we apply remains the same.

 Pennsylvania law regarding ineffective assistance of counsel is well documented. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), enunciated the process to be used as a two-pronged analysis consisting first of a determination of whether the issue underlying the ineffectiveness claim is of arguable merit,

and second whether the course chosen by counsel had some reasonable basis aimed at promoting the appellant's interests. *Commonwealth v. Pierce*, 345 Pa.Super. 324, 498 A.2d 423 (1985); *Commonwealth v. Cooper*, 333 Pa.Super. 559, 482 A.2d 1014 (1984). Recently, an *en banc* Superior Court added another consideration. In addition to the above requirements, an appellant must establish that the ineffectiveness so prejudiced his case that he did not receive a fair trial. *Commonwealth v. Pierce, supra.* At all times through the process, the law presumes effective counsel and the burden of proving ineffectiveness of counsel rests with the appellant. *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984).

## A.

Appellant's first allegation of ineffectiveness concerns the issue previously discussed, that is, trial counsel's failure to object to the judge's comments during jury instructions. Since we have just held that these comments did not constitute error on the part of the trial judge, we cannot find counsel ineffective for not raising an objection.

## B.

The second claim of ineffectiveness states that counsel should have called certain witnesses to testify as to appellant's reasons for fleeing to avoid arrest. We find no ineffectiveness for the following reasons. First, there is no arguable merit to this claim. Appellant himself was put on the stand and testified that his fear of the police led him to avoid arrest. While he was not able to testify as to what his family members told him, and his family members were not allowed to testify as to what they told him,[2] the jury was well aware of appellant's fear. (N.T. 487–492.) Any additional testimony would be cumulative. *See Common-*

---

2. Trial counsel did not call Constance McKendrick, appellant's sister, and Riccardo McKendrick, appellant's brother. The testimony not heard consisted of statements allegedly made to the two by police that they would shoot defendant on sight. They would also have testified to appellant's fear of police brutality.

*wealth v. Lochman,* 265 Pa.Super. 429, 402 A.2d 513 (1979). Second, trial counsel had good reason in not calling at least one of the witnesses since there was an extensive police record. This had been held to be a reasonable basis for failing to call a potential witness. *Commonwealth v. Jones,* 250 Pa.Super. 98, 378 A.2d 471 (1977). Lastly, there was no prejudice involved by not calling the witnesses. As stated previously, appellant's fear of the police was sufficiently before the jury and cumulative testimony was unnecessary since it would not add anything to the record. *Commonwealth v. Lochman, supra.*

## C.

We can easily dispose of the next ineffectiveness claim. Appellant argues that trial counsel should have moved for dismissal under Rule 1100(b). Present appellate counsel and trial counsel discussed this possibility before trial and determined that such a course of action would be a waste of time. We agree.

■ Rule 1100 is tolled when there has been a showing of due diligence.[3] Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been made to secure the defendant's attendance at trial. *See Commonwealth v. Johnson,* 305 Pa.Super. 310, 451 A.2d 546 (1982). The matters of availability and due diligence "must be judged by what *was* done by the authorities rather than (by) what was not done." *Commonwealth v. Williams,* 284 Pa.Super. 125, at 132, 425 A.2d 451, at 455 (1981) (emphasis in original, citation omitted). In addition, the Commonwealth does not have to exhaust every conceivable avenue

---

**3.** Rule 1100(d)(1) provides:

(d) In determining the period of commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest; provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence;

open to it. *Commonwealth v. Fanelli*, 292 Pa.Super. 100, 436 A.2d 1024 (1981).

■ There is ample evidence to support a finding of due diligence. A police detective went to appellant's mother's home twice and also to his brother's home twice looking for him. All family members, as well as appellant himself, were aware that the police were searching for him. No one, however, was willing to cooperate. Police had limited information as to where appellant could be found. Their efforts included searching tax records in Philadelphia, entering background material into the Pennsylvania Crime Information Center and the NCIC; following leads on a possible sighting of appellant and information of a girlfriend; and putting a burglary team on alert. It is clear, then, that there is no merit to appellant's claim of a Rule 1100 violation; trial counsel, therefore, cannot be ineffective.

## D.

The next claim of ineffectiveness deals with the cross-examination of appellant. During this time, the Commonwealth questioned appellant as to whether or not he told police of his alibi at the time of arrest. Trial counsel did not object to these questions. Appellant contends he should have. Appellant alleges that these questions were in violation of his right to remain silent. Appellant, however, was not silent upon arrest but chose instead to give a full statement. (N.T. 486–487, 513–514.) This was brought out on direct examination by trial counsel. We therefore agree with the trial court that appellant opened the door and legitimately subjected himself to questions concerning his statement. Once again, since the underlying claim is of no arguable merit, counsel will not be found ineffective.

## E.

■ Our next review of trial counsel's possible ineffectiveness is two-fold. First, appellant contends an exception should have been taken to the judge's failure to charge on

self-defense voluntary manslaughter. The judge charged only on provocation. Second, there should have been an objection to the judge's failure to charge on involuntary manslaughter.

We have no difficulty holding that the first claim does not amount to ineffectiveness. At the time of trial, appellant was not entitled to either voluntary manslaughter instruction unless he requested it. *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142 (1974). Therefore, trial counsel cannot be held ineffective for not objecting to the omission of an instruction he did not request. In addition, trial counsel's basis for not requesting such an instruction was reasonable. A self-defense voluntary manslaughter charge is obviously inconsistent with appellant's alibi that he did not kill Cheeseborough, someone else did. *Commonwealth v. Gay*, 489 Pa. 17, 413 A.2d 675 (1980).

The second contention is equally as easy to dismiss. As pointed out by the trial court, the jury was instructed as to the elements of involuntary manslaughter. There was no reason, then, for an objection. It follows that there can be no finding of ineffectiveness.

## F.

Appellant also alleges that counsel was ineffective for not objecting to remarks made by the prosecutor during his summation. This issue is four-pronged: (1) the reference to the murder as "a typical South Philadelphia job;" (2) that appellant had a motive because he was a friend of Allan Holman's; (3) commenting on the witnesses' heavy responsibility in identifying appellant; and (4) calling it "absurd" and "ridiculous" that the alibi witnesses remembered what they did so long ago.

Again, we find that these allegations have no arguable merit and cannot constitute ineffectiveness. The Commonwealth is allowed reasonable latitude in fairly presenting its version of the case to the jury. *Commonwealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975). As such,

the prosecutor can argue on both the trial evidence and any rational inferences. *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). In addition, a prosecutor can respond to remarks made by defense counsel in his closing, *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975) and to the credibility of witnesses, *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974).

This law effectively takes care of most of appellant's arguments. The appellant testified as to his relationship with Allan Holman; since trial counsel attacked the witnesses' credibility in his closing, the prosecutor was able to build it up again and was able to comment on other witnesses' credibility. In light of the latitude given a prosecutor, we find that he was within bounds. Trial counsel, therefore, can not be effective for not objecting.

■ The remarks about "a typical South Philadelphia job" will not be the basis of a finding of ineffectiveness since it was indeed objected to by trial counsel. (N.T. 746–760.) A decision to object at the end of the prosecutor's closing rather than during it is within trial counsel's discretion. His grounds for doing so cannot be attacked nor determined to be unreasonable.[4]

## G.

■ In his final ineffectiveness claim, appellant alleges that trial counsel was ineffective in failing to interview or call to testify witnesses who could have supported his alibi. At trial, appellant testified as to his alibi. This was corroborated by two other witnesses.

4. When questioned at the evidentiary hearing, trial counsel stated: I just did it that way because that's the way I normally do things. Perhaps I was wrong, I don't know—

(F)rankly, I'm very annoyed with people interrupting when I'm talking, and I think that it's annoying to jurors, too. Just as a matter of practice, I don't like to do it. And I think I annoy people when I do it. And I felt that the way this went, what with the remarks being made and my objection being taken and the judge instructing the jury, I thought that that was going to have a good effect.

The law does not require trial counsel to call to the witness stand every witness mentioned by a defendant. *Commonwealth v. Jones*, 234 Pa.Super. 68, 334 A.2d 689 (1975). In addition, the testimony must add something to the defense. *Commonwealth v. Charleston*, 251 Pa.Super. 311, 380 A.2d 795 (1977). Since the appellant and two others testified about the alibi, additional witnesses would not add anything to the record and therefore would be cumulative. *See Commonwealth v. Lochman*, 265 Pa.Super. 429, 402 A.2d 513 (1979).

## IV.

■■■ Appellant next argues that it was prejudicial error for the trial court to allow the Commonwealth to use its pre-emptory challenges to strike all black venire persons.[5] As a result, appellant was tried in front of an all-white jury.

The United States Supreme Court in *Batson v. Kentucky*, — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), has recently enunciated a new test in this area. *Batson* held:

> The defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen on account of their race.

*Batson* still requires a prima facie case but has enlarged a defendant's rights. We have applied *Batson* and find appellant has not made a prima facie case. The Court confidently relies upon the trial judges to analyze the cir-

5. The Commonwealth asked that one black juror be stricken for cause and three others were excused because of pre-emptory challenges. In addition, the Commonwealth used one of its pre-emptory challenges to strike a white venire person.

cumstances of a prosecutor's use of pre-emptory challenges. To that extent, we agree with the trial court's observation that:

> (A)s a practical matter, despite the fact that McKendrick was tried by an all-White jury, he instantly received a fair and impartial trial free of racial concerns. In truth, there were no racial issues in this case. Both the defendant and his victim were members of the Black race. The greatest portion of the witnesses for both sides were Black. In sum, this was not a case involving an interracial killing in which specific racial groups would be prone to take sides of prejudice.

(Tr.Ct.Op. page 11).

We, therefore, will affirm the decision.

## V.

Lastly, we address appellant's issue alleging reversible error by the trial court in prohibiting counsel from calling Allan Holman to testify and attempting to show his violent disposition through his past criminal record. In effect, appellant wanted to impeach his own witness in order to cast suspicion upon his credibility.

We acknowledge appellant's argument that the Federal Rules allow any party to impeach any witness.[6] That rule has not been adopted in Pennsylvania, however, and we decline to adopt it now. Pennsylvania law does give the trial judge discretion to decide whether defense counsel can cross-examine his own witnesses. *Commonwealth v. Turner*, 389 Pa. 239, 133 A.2d 187 (1957). The trial judge here utilized this discretion to deny counsel the right to impeach Allan Holman for the following reasons.

First, counsel wanted to admit evidence of Holman's prior convictions for violent crimes to establish motive for the homicide. The crimes of rape, murder, and aggravated assault took place in 1961, 1964 and 1972. They had no causal connection with the crime being considered and were

---

**6.** Fed.R.Evid. 607.

therefore inadmissible. *See Commonwealth v. Chism*, 480 Pa. 233, 389 A.2d 1041 (1978); *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976).

Second, the evidence would have been admitted to show the witness's violent disposition. This theory assumes that a violent disposition in a person supports the conclusion that that person may be the killer in any homicide. The court cannot allow such an assumption.

We find no abuse of discretion on the part of the trial judge and therefore affirm his ruling.

### Conclusion

The Pennsylvania Supreme Court, in *Commonwealth v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974), has stated:

"Although a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. A defendant is entitled to a fair trial but not a perfect one." *Commonwealth v. Hill*, 450 Pa. 477, 480–481, 301 A.2d 587, 590 (1973) (quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953)).

Keeping this in mind, our review of the above claims and the record satisfies us that the lower court properly conducted appellant's trial, thus allowing him to receive a fair one. As such, we are obligated to affirm the judgment of sentence.

Judgment of sentence affirmed.

KELLY, J., files a dissenting opinion.

KELLY, Judge, dissenting:

I respectfully dissent from the majority opinion. Appellant's tenth question for review raises the issue of whether the trial court committed prejudicial error in denying a defense motion to dismiss the jury panel from which all potential black jurors had been removed either by challenge

for cause or by peremptory challenge.[1] The majority finds no error. I, however, find error and accordingly dissent.

Although Pennsylvania courts adopted the rationale of *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) in cases such as *Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975) (then Justice Nix, now Chief Justice, dissenting) these holdings are no longer constitutionally valid in light of the very recent United States Supreme Court decision in *Batson v. Kentucky,* ── U.S. ──, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson, supra,* specifically overruled *Swain, supra,* and therefore overruled all of *Swain's* progeny throughout the states, including the Pennsylvania holding in *Martin, supra.*[2] The *Swain* standard stated that in order for a defendant to establish a prima facie case of discrimination, *systematic exclusion* by the prosecution of black venirepersons in *several cases* within a jurisdiction must be shown. *Batson* set forth a new standard: a defendant must merely raise an *inference* of discrimination in his or her own *particular* jury selection process, thus establishing a lesser burden of proof.

> The defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen on account of their race.

**1.** One black venireperson was excluded for cause; the remaining four black potential jurors were peremptorily struck by the Commonwealth. Only one white venireperson was peremptorily challenged by the Commonwealth.

**2.** *Batson, supra,* was decided on 14th Amendment Equal Protection grounds.

*Batson,* —— U.S. at ——, 106 S.Ct. at 1723, 90 L.Ed.2d at 87, 88 (Citations omitted).

There are three prongs to the newly enunciated standard of proof. We do note that defendant on appeal has raised several points which may satisfy this new standard. First, defendant as a black man is a member of a cognizable racial group. Moreover, the prosecutor exercised four peremptory challenges to remove all black venirepersons from the jury so that defendant was tried by an all-white jury. Second, appellant may "rely on the fact" that the peremptory challenges permitted "those to discriminate who are of a mind to discriminate."

As to the third prong, among the possible "relevant circumstances" the U.S. Supreme Court suggests are the *Swain* type systematic exclusion of racial minorities, an underrepresentation of minorities in the venire, or prosecutorial conduct during *voir dire,* including a pattern of strikes against black jurors. *Batson, supra* —— U.S. at ——, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. This list is by no means intended to be exhaustive.

A review of the record in this case revealed that trial counsel attempted to suggest in the court below that there was an underrepresentation of minorities in the venire. In chambers, before *voir dire,* counsel for defense noted:

... I have seen the panel. There are 50 members of the panel. Only eight of these people are black.

My client is black. It is my feeling that, since approximately 45 percent of the population of the city is black, that there should be a greater percentage on this panel in order for my client to have what is constitutionally guaranteed to him, that is, a fair trial by his peers.

Clearly here is a situation where there are 50 on this panel and each individual has seven peremptory strikes, the District Attorney is in a position of getting either an all-white panel or virtually an all-white panel to try this case against my client. It is for that reason that I make this motion.

(N.T. 3/27/78, p. 46).[3]

I would further suggest that an examination of the backgrounds of each of the black venirepersons struck from the jury panel, including their age, gender, education level and employment history, may provide further proof of discriminatory intent. The court on remand may be able to discern whether there were any common factors among the challenged venirepersons, other than their race, which fit any permissable "neutral" strategy on the Commonwealth's part.[4]

In addition to the determination of whether an underrepresentation of minorities in the venire occurred, and in addition to examination of the record with particular emphasis on *voir dire*, the entire record of the trial should be reviewed as it may be helpful in determining whether the Commonwealth harbored discriminatory intentions. The fruit of *discriminatory preparations* during *voir dire* may be harvested both during trial and at closing arguments. Thus, by the use of hindsight, the trial court on remand may also decide that the prosecutor's closing remarks raise an inference of discrimination in the jury selection process. For instance, the prosecutor stated in his closing remarks:

Ladies and gentlemen, I submit to you that this case is about a murder that *took place in South Philadelphia,*

3. From our examination of the record the prosecutor, in chambers, did not address or even refute the defense counsel's concerns but merely cited *Swain, supra* as permitting him to practice any peremptory challenges he desired. (N.T. 3/27/78 at 47). In fact, the Commonwealth behaved exactly as the defense had predicted, exercising its peremptory challenge to exclude each otherwise acceptable black venireperson to be called forward for *voir dire*. The result was an all-white jury.

4. The 4 jurors excised by peremptory challenges were:
Juror 54—a 24 year old single female social worker with a graduate degree;
Juror 298—a 26 year old married female postal employee and high school graduate;
Juror 360—a married 57 year old male unemployed welder (18 months unemployed);
Juror 213—a 48 year old married woman who did not graduate from high school—unemployed.
(N.T. p. 278, 317, 328, 412).

*in the projects.* It is not the kind of a case which carries with it a complex motive. No, this is a *typical South Philadelphia job,* as the policemen say. *It's a job. It's a typical South Philadelphia ghetto type job.*

(Emphasis added). (N.T. 71a). Although this comment does not specifically enunciate the predominantly racial character of the South Philadelphia projects, the all white jury, having observed the black defendant and black neighborhood witnesses, could not fail to draw the correlation between "ghetto", "projects" and "black".[5]

I express no opinion as to whether appellant has in fact raised an inference as to discrimination in jury selection. However, because I find that defendant has raised a meritorious issue I would grant him the same remedy afforded the appellant in the *Batson* case.

The remedy afforded appellant in *Batson* was to remand the case for further proceedings to determine first if the facts made out a *prima facie* showing of purposeful discrimination and second if the prosecutor was able to come forward with a "neutral explanation" for his peremptory challenges.

The lower court would then decide the credibility of the prosecutor's explanation, and the constitutional permissibility of the prosecutor's actions. If the prosecutor fails to provide an adequate "neutral explanation," the Supreme Court holding is clear: "our precedents require that petitioner's conviction be reversed." *Batson,* —— U.S. at ——, 106 S.Ct. at 1725, 90 L.Ed.2d at 90.[6]

**5.** As our eminent Chief Justice Nix wrote in his dissent in *Martin, supra* 461 Pa. at 299, 336 A.2d 290:

In northern communities systematic exclusion of an entire racial group from juries is rarely seen. More frequently, the problem arises in cases where the facts give rise to racial overtones and where an objective and unbiased jury is most needed.

**6.** *Batson* specifically affords retroactive relief to similarly situated defendants. Four justices, Justices Brennan, Marshall, Stevens and Blackmun joined Justice Powell in holding the *Batson* decision should have retroactive application, thus constituting the five Justices required for a majority. Justices White and O'Connor, the sixth and

The Supreme Court's decision marks an important change in the law of jury selection and it is our constitutional duty to comply with this pronouncement. We cannot "sit supinely by" and "flaunt justice", (U.S. Justice Marshall, concurring opinion in *Batson,* quoting Chief Justice Nix in *Martin, supra,* 461 Pa. at 299, 336 A.2d 290, Nix, J., dissenting). Accordingly, I dissent.

seventh votes, joined the court in its holding but would not apply the precedent retroactively.