J-S04003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                :           PENNSYLVANIA
                                    :
          v.                          :
                                    :
ANTOINE ALPHONZO HUNTER     :
                                    :
          Appellant            :     No. 759 MDA 2018

Appeal from the Judgment of Sentence November 2, 2017
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0001522-2016

BEFORE: SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:             **FILED MAY 07, 2019**

Antoine Alphonzo Hunter ("Appellant") appeals from the judgment of
sentence entered on November 2, 2017, after a jury convicted him of murder
of the second degree, burglary, three counts of robbery, and three counts of
conspiracy:[1] burglary, robbery, and theft. We affirm.

The trial court summarized the facts of this case as follows:

> On December 14, 2015, six (6) individuals traveled to the
> residence of the victim in the instant case, Deval Green, to steal
> from him. Those six (6) individuals included [Appellant],
> [Appellant's] co-defendant at trial—[Tarence Lamar Reed]—and
> four other individuals: Damien Calloway, Tyree Swindell, Gerald
> Scarlett, and Cheyenne Kline-Branche, all of whom pled guilty
> prior to the jury trial, and provided testimony at trial.
>
> On December 13, 2015, the six (6) individuals devised a
> plan to steal from the victim at his residence located at 140 Quarry
> Road, Chambersburg, Pennsylvania. That night, several of the

---

[1] 18 Pa.C.S. §§ 2502(b), 3502(a)(1), 3701(a)(1)(ii), and 903(a), respectively.

---

\* Former Justice specially assigned to the Superior Court.

[co-conspirators] traveled to Giant grocery store, where [Reed] and Swindell went inside to purchase duct tape and cigarettes. The others waited in the parking lot in a gold van owned by the mother of Kline-Branche.

In the early hours of December 14, 2015, the six (6) individuals left the residence of Kline-Branche and Scarlett in two (2) vehicles, a red sedan and the gold van. Each vehicle was parked a distance from the victim's residence. [Reed] then approached the residence, along with [Appellant] and Calloway, while the other three (3) [co-conspirators] waited at the cars. After approaching the residence, the victim met the three (3) [co-conspirators] at the door. While Calloway waited outside, [Reed] and [Appellant] went inside, where they encountered the victim's fiancée Faith Carbaugh, and Ms. Carbaugh's two children, Ms. Carbaugh's son Bishop Diehl, and the couple's young daughter. [Reed] and [Appellant] took a black backpack from the residence, along with two video gaming systems—an Xbox and a Play Station 4. During the course of this incident, while on the front steps of the residence, [Reed] shot the victim in the shoulder, leg, and neck, thereby causing the victim's death.

[Reed, Appellant], and Calloway then returned to the two vehicles, and left the victim's residence. [Reed and Appellant] travel[l]ed in the red sedan to Hagerstown, Maryland. The other four individuals left the residence in the gold van, and travelled back to Kline-Branche and Scarlet[t]'s residence, dropping Calloway off along the way. Kline-Branche and Scarlet[t] then attempted to collect the evidence of their crimes from their residence; the pair later took what they had rounded up and brought it to Zade Sollenberger's residence for him to hide.

Trial Court Opinion, 4/23/18, at 3–4.

Following Appellant's arrest, the denial of his pretrial motions, and several continuances, he proceeded to a jury trial held from September 11, 2017, to September 22, 2017. The jury convicted Appellant as stated above. Appellant moved to set aside the verdict, which request the trial court denied on September 22, 2017. On November 2, 2017, the trial court sentenced

- 2 -

Appellant to life imprisonment on the second-degree murder conviction.[2]

Appellant filed a post-sentence motion, the Commonwealth responded, and the trial court conducted a hearing on January 18, 2018. Pursuant to Pa.R.Crim.P. 720, the post-sentence motion was denied by operation of law.

Appellant filed a timely appeal, and, along with the trial court, he complied with Pa.R.A.P. 1925. On appeal, Appellant presents the following questions for our consideration:

> I.    Did the trial court abuse it discretion in denying [Appellant's] Post-Sentence Motion for a new trial because the verdicts were against the weight of the evidence?
>
> II.   Did the trial court abuse its discretion in denying [Appellant's] Pre-Trial Omnibus Motion to Quash the witness's photo identification of [Appellant]?

Appellant's Brief at 4.

Appellant first argues that he is entitled to a new trial because the verdicts were against the weight of the evidence. Appellant's Brief at 13. Appellant claims that evidence placing him at the victim's residence was inconsistent with (1) the descriptions provided by the victim's family and the co-conspirators and (2) the unreliable versions of the events presented by the

_____

[2] Additionally, the trial court sentenced Appellant as follows:  on the burglary conviction, incarceration for seven to fourteen years, consecutive to the life sentence; on each of the three robbery convictions, incarceration for eight to sixteen years, consecutive to each other and the life sentence; on the conspiracy (burglary) conviction, incarceration for four to eight years, concurrent to his life sentence; on the conspiracy (robbery) conviction, seven to fourteen years, concurrent to the life sentence.  The conspiracy (theft) conviction merged for sentencing purposes.  Sentencing Order, 11/2/17.

co-conspirators. *Id.* at 14–16. Moreover, Appellant contends that evidence of his cell phone being in the vicinity of the victim's house "failed to create a reasonable inference that [Appellant] had the phone in his possession." *Id.* at 16.

Our standard of review is as follows:

> When considering challenges to the weight of the evidence, we apply the following precepts. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, [a]ppellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is or is not against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.
>
> A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed. For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence.

*Commonwealth v. Miller*, 172 A.3d 632, 642-643 (Pa. Super. 2017) (internal citations and quotation marks omitted). "This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered." *Commonwealth v. Clay*, 64 A.3d 1049, 1054–1055 (Pa. 2013). We have described the limits of a trial court's discretion as follows:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Clay*, 64 A.3d at 1054–1055 (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879–880 (Pa. 2008).

Here, the trial court denied Appellant's weight challenge based on the following analysis:

> Four of the averments offered by [Appellant] in support of his weight claim relate to the credibility of witnesses and their testimony at trial. First, [Appellant] avers that the testimony of both of the surviving witnesses exonerated [Appellant] and, to the contrary, identified another person who admitted to being at the scene of the crime as a perpetrator. Similarly, [Appellant] avers that the testimony of each of the co-[conspirators] was patently unreliable and unbelievable. [Appellant] also avers that the testimony of an eyewitness, Zade Sollenberger, exonerated

- 5 -

[Appellant]. Finally, [Appellant] avers that the Defense offered an alibi witness whose testimony was not challenged, as untruthful in any way.

. . . Here, the Commonwealth provided testimony from multiple witnesses. Significantly, several witnesses identified [Appellant] as both a participant in the planning, and the execution of the crimes committed against the victim and his family which ultimately resulted in the victim's death.

While testimony from some witnesses may have differed from that of other witnesses, it was for the jury, and not this [c]ourt, to assess the credibility of those witnesses and their testimony.

Next, [Appellant] avers that no physical evidence placed [Appellant] at the scene of the crime. Similarly, [Appellant] avers that the only evidence that was harmful to [Appellant] merely placed his cell phone, and not [Appellant], at the scene of the crime. However, as noted below, this averment is plainly erroneous; several co-[conspirators] identified [Appellant], and placed him at the scene of the [crime]. Moreover, the Commonwealth presented evidence supporting the inference that [Appellant] was with his cell phone at the scene of the crime.

* * *

The jury is free to believe all, part, or none of the evidence, and to make credibility determinations. Upon careful consideration of the record, the [c]ourt does not find any of the evidence presented by [Appellant] in support of his weight claim so clearly of greater weight than the evidence presented supporting his convictions that failure to give it credence amounts to a denial of justice. The verdicts are not so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, 4/23/18, at 59–61 (internal citations omitted).

Based upon our complete review of the record, we are compelled to agree with the trial court. Issues of witness credibility necessarily include questions of inconsistent testimony and are for the factfinder to resolve.

***Commonwealth v. Sanchez***, 36 A.3d 24, 39 (Pa. 2011). As for the inconsistent testimony on the record before us, our review of the record confirms the Commonwealth's assessment:

> With regard to the testimony of the two surviving victims, some of the details provided by them match the description of [Appellant]. For instance, both of the surviving victims testified that both of the gunmen, who entered their home on the night of the burglary and murder, were black males. (T.P. Trial, Day 2, September 12, 2017, at 85—89, 160—161). One of the surviving victims testified that one of the gunmen wore gold foamposite shoes. (Id. at 90[–91). . . . The surveillance images and videos clarify that [Appellant], who did not go to Giant with the other co-[conspirators], must have worn the gold foamposites on the night of the murder. A co-[conspirator] corroborated this testimony when he affirmatively testified that [Appellant] wore gold sneakers on the night of the murder. (T.P. Trial, Day 7, September 19, 2017, p. 30).[3]
>
> Additional details were corroborated by the testimony of the co-[conspirators]. . . . Scarlett testified that shortly before going to the victim's residence on the night of the murder, he, [Kline-]Branche, Calloway and three guys from Hagerstown were all together at which time the burglary was discussed in the presence of all. (T.P. Trial, Day 5, September 15, 2017, p. 202). Scarlett further testified that the guys from Hagerstown rode in a red sedan. (Id. at 200). . . .
>
> [Kline-]Branche testified consistently with Scarlett's testimony, that she, Scarlett, Calloway, Swindell, Reed and [Appellant] discussed plans to go to the victims' residence to burglarize them. (T.P. Trial, Day 4, September 14, 2017, p. 125). She testified that [Appellant] rode in the red sedan to the scene of the murder on the night of the murder, while she, Scarlett, Calloway and Swindell rode in the gold van. (Id. at 126–127). She testified that when they arrived at the scene, Calloway exited the gold van and [Appellant] and Reed exited the red sedan, they interacted and then moved toward the victims' residence. (Id. at

_____

[3] Co-conspirator Kline-Branche also testified that Appellant was wearing gold sneakers. N.T., 9/14/17, at 126, 181.

133–137). In addition, she testified that [Appellant] wore a beard that resembled that of James Harden. (Id. at 180–181).

Calloway's testimony corroborated the testimony of Scarlett and [Kline-]Branche in that he testified that he, [Kline-]Branche, Scarlett, Swindell, Reed and [Appellant] were all present at [Kline-]Branche's house when the burglary was discussed prior to going to the victims' residence later that night. (T.P. Trial, Day 7, September 19, 2017, p. 23–26). He described [Appellant] as being from Hagerstown and having a beard like James Harden. (Id. at 25). . . . Furthermore, he testified that at the scene of the burglary and murder, [Appellant] was armed with a shotgun. (Id. at 35–36). In addition, Calloway supplemented the other witnesses' testimony as he testified that he, Reed and [Appellant] went to the victim['s] porch and that [the victim] was unarmed while Reed carried a handgun and [Appellant] held a shotgun. (Id. at 42). . . . He explained that they ambushed [the victim] on the porch at which time Calloway saw Reed shoot [the victim] and [the victim] fell to the porch floor. (Id.). Although [Appellant] now claims that some of the co-[conspirators'] testimony was contradictory, many of the foregoing facts were consistent and corroborated one another. It is not shocking that the jury believed the facts that were consistent and corroborated throughout the co-[conspirators'] testimonies.

Commonwealth's Brief at 9–11.

Sitting as the finder of fact, the jury was free to believe all, part, or none of the evidence against Appellant. *Commonwealth v. Tejada*, 107 A.3d 788, 792–793 (Pa. Super. 2015). The jury weighed the evidence and concluded Appellant participated in the crimes in question. We agree with the trial court that this determination is not so contrary to the evidence as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact-finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Appellant's challenge to the weight of the evidence.

Next, Appellant complains that the trial court denied his pretrial motion to suppress the photo identification by co-conspirator Calloway. Appellant's Brief at 17. According to Appellant:

> under the totality of the circumstances, [Appellant's] picture having a different portrait style, signifying his out-of-state status [compared to the seven Pennsylvania photos], and appearing dissimilar to the description given [in that Appellant was not shown with a James Harden beard], created a substantial likelihood that Calloway would misidentify [Appellant] as one of the Hagerstown group from the red sedan.

*Id.* at 18–19.

In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1088–1089 (Pa. 2013). In reviewing an order denying a suppression motion:

> [a]n appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record . . . . Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that an appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Caple*, 121 A.3d 511, 516–517 (Pa. Super. 2015) (citations omitted).

"Whether a pretrial identification should be suppressed as unreliable is determined from the totality of the circumstances." *Commonwealth v. Cousar*, 154 A.3d 287, 306 (Pa. 2017). "A pretrial identification will not be suppressed unless the facts demonstrate that the identification procedure was

so infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1278–1279 (Pa. 2016) (citation omitted). "Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." ***Commonwealth v. Fisher***, 769 A.2d 1116, 1126 (Pa. 2001) (citation omitted). The existence of a single possibly suggestive element in an identification procedure does not automatically require suppression of the identification evidence. ***Commonwealth v. Monroe***, 542 A.2d 113 (Pa. Super. 1988).

The trial court disposed of this issue in its order and opinion denying Appellant's omnibus pretrial motion:

> In the instant case, [Appellant] contends that the photo array—out of which he was selected—was "inappropriate and unjust in that none of the persons depicted in the photo array met the description set forth by [co-conspirator] Calloway in identification by police, including but not limited to the existence of facial hair." ([Appellant's] Brief, at 7). [Appellant] also avers that the photo array was made further inappropriate because "the photograph of [Appellant] used in the array was taken closer than the photograph[s] of the other persons, thus making [Appellant's] hea[d] larger, more distinctive and likely noticeable to [co-conspirator] Calloway," and that "several photos were against a white background and others a dark background." (*Id.* at 7-8).
>
> This [c]ourt is not persuaded that the photo of [Appellant] differs significantly from the others included within the photo array. Despite [Appellant's] arguments to the contrary, this [c]ourt specifically finds that [Appellant's] photo does not "stand out more than those of the others" in the photo array. This [c]ourt's own review of the computer generated photo array reveals photographs of eight black men who appear to be of

- 10 -

similar age and to have similar facial features, hairlines, and little to no facial hair. [Appellant] himself—although likely inadvertently—concedes in his Brief that "the photos presented to Calloway, including that of [Appellant], were men with little or no facial hair." ([Appellant's] Brief, at 8). While obviously not identical, the people depicted in the photo array "all exhibit similar facial characteristics."

[Appellant] cites the size of [his] head in his photo, and argues this make[s] the photo array unduly suggestive. Similar arguments have been rejected by higher Pennsylvania courts; the Superior Court rejected an appellant's similar argument that the photo array was suggestive because "unlike the other photos in the array, appellant's photograph was taken from a distance and, as a result, made his head appear smaller than the others." *Commonwealth v. Patterson*, 940 A.2d 493, 503 (Pa. Super. 2007). There, the Superior Court concluded that while there was a slight variation—"appellant's neck and shoulders were visible to the greatest extent, while the court observed that all of the photographs depict the subject's neck and at least three of the other photographs display the subject's shoulders"—that the photograph in question did not stand out more than the others or make the photo array unduly suggestive. *Id.* Similarly, while [Appellant's] head may be slightly larger than the other photographs included, this [c]ourt considers the variation to be slight, and not rising to the level of being unduly suggestive.

Trial Court Opinion, 5/19/17, at 15–17.

The record supports the factual findings of the trial court. Commonwealth Exhibit 2. Co-conspirators Kline-Branche and Calloway testified that Appellant wore a "James Harden beard" on the night of the murder. N.T., 9/14/17, at 180–181; N.T., 9/19/17, at 25. However, the surviving victims testified that the gunmen had half-masks covering their faces; therefore, they did not observe facial hair on either gunman. N.T., 9/12/17, at 85, 159–161. The fact that the photo array showed men with little or no facial hair was consistent with the surviving victims' testimony and,

- 11 -

therefore, was not prejudicial to Appellant. Our review of the array confirms that each photograph shows the head, neck, and shoulders of the individual depicted, that all of the individuals have similar facial characteristics, and that the backgrounds are not so distinctive as to draw attention to any particular photograph. Considering the totality of the circumstances, therefore, we conclude that the identification procedure was not "infected by suggestiveness as to give rise to a substantial likelihood of irreparable misidentification." **Johnson**, 139 A.3d at 1278–1279. Accordingly, we discern no error in the trial court's conclusion that Appellant was not entitled to suppression.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/07/2019