483 A.2d 855

**COMMONWEALTH of Pennsylvania**

v.

**John Vincent WATERS, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1984.

Filed Oct. 12, 1984.

Reargument Denied Nov. 28, 1984.

Petition for Allowance of Appeal Denied Feb. 14, 1985.

the issues have not been preserved for review on the merits, we decline to exercise the Rule 905(a) option.

514

Arthur L. Goldberg, Harrisburg, for appellant.

Kevin A. Hess, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

Before CIRILLO, BECK and CERCONE, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence entered on January 25, 1983, in the Court of Common Pleas of Cumberland County. Following a jury trial on September 23, 1982, the appellant, John Vincent Waters, was convicted of first-degree murder. This was the second trial of the appellant. In the first trial held in May, 1982, the jury had been unable to render a verdict as to the murder charge, but did find the appellant guilty of a related charge of involuntary deviate sexual intercourse, 18 Pa.C.S. § 3123(4). Post-trial motions as to both the involuntary deviate sexual intercourse conviction and the murder conviction were filed and subsequently denied. The court imposed a sentence of life imprisonment for the murder conviction and a term of four to ten years to be served concurrently for the involuntary deviate sexual intercourse conviction. This appeal followed.

On October 14, 1981, the body of an eleven year old boy, Steven Turner, was found stabbed and bludgeoned to death in an abandoned farm house within a mile of his home in Cumberland County, Pennsylvania. The body, covered by stones and boards, was discovered in the evening as a result

of a search for the boy which commenced when he did not come home for dinner.

An autopsy revealed that the 4 foot 9 inch, 80 pound sixth grader had died as a result of multiple head injuries. He had sustained a massive fracture of the skull from blows to the back and the side of the head, a broken jaw on each side of the face, a stab wound to the back of the neck and a stab wound to the back of the chest. He had also been subjected to a post-mortem incise wound on the right wrist and stab wound in the front of the neck. The blade of a knife, with its handle broken off, was left in the victim's neck. The autopsy report also indicated that sperm was present in the victim's mouth.

The appellant, John Vincent Waters, a 152 pound, sixteen year old, 5 foot 8 inch high school student told police during an original canvass of the neighborhood, that he had last seen the victim on the afternoon he disappeared. He told the police that he had observed the victim getting into an unknown car which subsequently drove out of the development.

As a result of a further canvass of the neighborhood, the police obtained a steak knife from the appellant's mother. The knife which she had in her house matched the one found at the murder scene including the blade which had been left in the victim's throat.

On October 25, 1981, the police requested that the appellant and his father report to the municipal building for questioning concerning the homicide. The appellant was given the *Miranda* warnings in the presence of his father. Thereafter he and his father consulted with each other. The appellant waived his rights and agreed to speak to the police without having his father present. His father had no objection to such an interrogation.

During the course of the questioning, the appellant made an inculpatory statement, admitting that he had engaged in oral intercourse with the victim and then had killed him.

On appeal, the appellant alleges that the court erred in failing (1) to transfer the proceeding to juvenile court, (2) to suppress his October 25 statement, (3) to grant a mistrial after the publication of prejudicial news stories, (4) to cover several suggested points for charge, and (5) to permit counsel in his closing to discuss the applicable penalties of the offenses. The appellant also challenges the constitutionality of the involuntary deviate sexual intercourse statute and of the imposition of a mandatory life sentence. We find that none of the appellant's allegations are meritorious and accordingly affirm the judgment of sentence.

The appellant alleges that his case should have been transferred to the juvenile court. He had filed a pre-trial motion requesting such a transfer, but it had been denied. At the time of his arrest, the appellant was sixteen years old, but due to the nature of his offenses, the proceedings were instituted in criminal court.

■ Under the Judicial Code, 42 Pa.C.S. § 6322(a), the court has the discretion to transfer appropriate cases to juvenile court. It is, however, the burden of the petitioner, herein the appellant, to prove that he does not belong in criminal court. *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975). This is accomplished by demonstrating a need for and an amenability to programs for rehabilitation, supervision, and care provided by the juvenile court system. *Commonwealth v. Wallace*, 495 Pa. 295, 433 A.2d 856 (1981). If the evidence does not affirmatively establish that the petitioner would benefit from such programs and there exists no special reason to spare the youthful offender from adult prosecution, jurisdiction remains within the criminal court. *Commonwealth v. Pyle, supra.*

■ Although the hearing court noted that the appellant's personal background and lack of a prior record were factors supporting transfer, the nature and circumstances of the crime, specifically the violent, aggressive and willful conduct of the appellant, as well as the need to protect the community, militated against it.

We are satisfied that, under the instant circumstances, the court was warranted in denying the appellant's petition to transfer. This result is in accord with the great weight of authority. *See Commonwealth v. Sourbeer*, 492 Pa. 17, 422 A.2d 116 (1980); *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979); *Commonwealth v. Barber*, 275 Pa. Super. 144, 418 A.2d 653 (1980).

■ The appellant next contends that the trial judge erred in denying the motion to suppress his statement made to police on October 25, 1981, a statement that was vital to the Commonwealth's case. Specifically, the appellant asserts that the police, in conducting the interrogation, did not comply with the "interested adult rule" as promulgated in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669, *cert. denied*, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975).

The *McCutchen* rule provided that no juvenile could waive his *Miranda* rights without being provided with an opportunity to consult with an interested adult, who is informed of the juvenile's rights and is interested in the welfare of the juvenile. However, the Pennsylvania Supreme Court has overruled the *McCutchen* rule in two recent decisions.

In *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983), the Court created a rebuttable presumption that a juvenile is incompetent to waive his Constitutional rights without first having the opportunity to consult with an interested and informed adult.

> [T]here shall exist a *presumption* that a statement derived in the absence of ... an opportunity for consultation [with an interested and informed adult] is inadmissible, but that presumption shall be regarded as rebutted where the evidence *clearly demonstrates* that the statement was in fact knowingly and voluntarily given.

*Id.*, 502 Pa. at 223, 465 A.2d at 992.

Last April the Supreme Court overruled *Christmas* in *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283

(1984). "We now reject the application of a rebuttable presumption that a juvenile is incompetent to waive his Constitutional rights without first having an opportunity to consult with an interested and informed adult." *Id.*, 504 Pa. at 521, 475 A.2d at 1287. In place of the *Christmas* rebuttable presumption the Court in *Williams* substituted a totality of the circumstances test. "The protection against the use of involuntary confessions ... is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles." *Id.*, 504 Pa. at 523, 475 A.2d at 1288.

The *Williams* Court listed some factors which should be considered in determining whether a juvenile's confession was knowingly and freely given. "Among these factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult." *Id.* More specifically, the *Williams* Court held the confession valid in that case since the defendant's physical condition was normal at the time of his arrest and detention; he was not subjected to physical or psychological abuse; he was of normal intelligence and responsive to questions asked of him; both defendant and his father were informed of defendant's rights prior to the confession; defendant's father was present during the interrogation and when defendant waived his rights and made a confession; and defendant and his father had a continuing opportunity to confer in the presence of authorities. *Id.*

Applying the *Williams* test to the instant case, we hold that the appellant knowingly and intelligently waived his *Miranda* rights and made a voluntary confession. The record shows that appellant, 16, was of normal intelligence and responsive to questions asked of him. There is no evidence that appellant was subjected to physical or psychological abuse. Both appellant and his father were informed of appellant's *Miranda* rights on two occasions prior to their private conference out of the presence of the officers.

(N.T. 8–9) [1] After appellant and his father consulted privately, the officers again advised them of appellant's *Miranda* rights. Both the appellant and his father indicated that they wanted to waive appellant's rights and both agreed that the appellant would talk to the police without his father being present (N.T. 10–11). During the course of questioning that followed, the appellant on numerous occasions indicated that he did not object to talking to the officers alone without his father (N.T. 11). Appellant then confessed to the murder.

Based on all the relevant facts and circumstances, it is clear from the totality of the circumstances that the appellant's confession was knowingly, intelligently, and voluntarily made. The fact that appellant's father was not present during the interrogation does not invalidate the confession because both the appellant and his father were in full agreement prior to the interrogation that appellant would waive his rights and give a statement. Therefore, the lower court properly denied appellant's motion to suppress the confession.

The appellant next challenges the denial of his motion for a mistrial, which was prompted by several allegedly prejudicial articles published in *The Evening Sentinel*, three days after trial had begun. The appellant argues that because of the inflammatory nature of the publicity, prejudice to the appellant must be presumed and a new trial granted.

■ The decision to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion. *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975).

■ The record demonstrates that on three occasions at the end of each day's proceedings, the judge instructed the jury to avoid publicity and discussion of the case. None of

---

1. To this extent, the authorities in the instant case went further in the attempt to safeguard appellant's rights than the officers in *Williams*, where neither the juvenile defendant nor his father were advised of defendant's *Miranda* rights prior to their private conference.

the jurors revealed any noncompliance with these instructions when asked on the morning after the publication of the objectionable articles. Therefore, we must conclude that the jury was not exposed to the damaging edition of *The Evening Sentinel,* thereby precluding any prejudice to the appellant. The motion for a mistrial was properly denied.

■■■ The appellant also asserts, as grounds for a new trial, the trial judge's refusal to instruct the jury in accordance with the appellant's proposed instructions. However, since no specific objections were made prior to the jury's deliberations, as required by Pa.R.Crim.P. 1119(b), these objections are deemed waived and can not serve as the basis for a new trial. *Commonwealth v. Watlington,* 452 Pa. 524, 306 A.2d 892 (1973). Assuming arguendo that the issues had been preserved, it is well settled that a trial judge is not required to accept a requested instruction verbatim, even if legally correct and timely filed. The court may select its own form of expression, so long as the issue is adequately, accurately and clearly presented to the jury. *Commonwealth v. Gardner,* 246 Pa.Super. 582, 371 A.2d 986 (1977). Our review indicates that all points for charge requested by the appellant were properly rejected as superfluous.

■■■ Next the appellant cites as error the court's refusal to permit defense counsel to discuss the penalties of the offenses in his closing argument. Punishment is a matter solely for the court and not for the jury to know or to consider during its deliberations. *Commonwealth v. Lucier,* 424 Pa. 47, 225 A.2d 890 (1967). Accordingly, any reference to penalties made in closing would have been improper.

The appellant lastly challenges the constitutionality of the involuntary deviate sexual intercourse statute, 18 Pa.C.S. § 3123(5), as violative of equal protection, and the imposition of a mandatory life sentence for first-degree murder,

18 Pa.C.S. § 1102(a), as cruel and unusual punishment as well as violative of equal protection.

█ Section 3123(5) imposes criminal sanctions on any person "who engages in deviate sexual intercourse with another person who is less than 16 years of age." We acknowledge that this statute creates a classification based upon age but maintain that such classification is reasonable, and not violative of the Equal Protection Clause.

█ The Fourteenth Amendment forbids arbitrary discrimination by the states against persons or classes, but it permits the Commonwealth, as part of its police power, to create and define a criminal offense through classifications of persons so long as these classifications are reasonable and the legislation bears equally on all in the same class. *Commonwealth v. Lewis*, 443 Pa. 305, 279 A.2d 26, *cert. denied* 404 U.S. 1003, 92 S.Ct. 571, 30 L.Ed.2d 556 (1971). Thus, a classification will be held valid if there is any conceivable basis upon which it may relate to a legitimate government interest.

We therefore hold that the age classification in 18 Pa.C.S. § 3123(5) is not arbitrary but rather rests upon a real and substantial difference between the maturity of adults and that of youth. As the hearing court noted in its opinion of August 24, 1982, denying defendant's post-trial motions:

> We conclude that such an interest—society's interest in fostering healthy surroundings to yield well-adjusted citizens, free of social and psychological scars—exists, and that it is served by a blanket prohibition on all deviate sexual experiences between young adolescents.

█ The appellant's challenge to the constitutionality of a mandatory sentence of life imprisonment in cases of first-degree murder where the death sentence is not applicable is similarly without merit.

As the Superior Court noted in *Commonwealth v. Bryant*, 239 Pa.Super. 43, 361 A.2d 350 (1976):

> It is well settled that the fixing of penalties for crimes is a legislative function, *United States v. Wallace*, 269 F.2d

394, 398 (3d Cir.1959), and it is a maxim of constitutional law that the legislature will be presumed to have acted within constitutional limits, *Atchison, Topeka, and Santa Fe R. Co. v. Matthews*, 174 U.S. 96, 104, 19 S.Ct. [609] 612, 43 L.Ed. 909 (1899). It is also well established that the burden of demonstrating the unconstitutionality of a legislative enactment is upon the person alleging the act's unconstitutionality. [Citations omitted]. We therefore should not declare an act of assembly void unless its violation of the Constitution is so clear as to preclude doubt or hesitation. *Commonwealth v. Lukens*, 312 Pa. 220, 223, 167 A. 167 (1933).

*Id.*, 239 Pa.Superior Ct. at 46, 361 A.2d at 351.

██ The appellant has not met his burden in this case. A mandatory life sentence, as established by the legislature, is clearly not cruel and unusual punishment for the crime of first-degree murder. Indeed, this issue has already been decided in *Commonwealth v. Sourbeer, supra*, 492 Pa. at 33, 422 A.2d at 123, in which the Supreme Court stated that a mandatory life sentence:

> is not cruel and unusual punishment for it is not an excessive and unnecessary punishment disproportionate to the crime and does not shock the moral conscience of the community. These considerations, coupled with the fact that life sentences lack the ponderous finality of the death penalty, induce us to uphold mandatory life sentences for murder in the first degree.

██ The appellant also contends that the sentencing statute is unconstitutional because it fails to provide for consideration of mitigating or aggravating circumstances. A similar challenge was made and rejected in *Commonwealth v. Dessus*, 262 Pa.Super. 443, 396 A.2d 1254 (1978), in which the Superior Court recognized the significant difference for Eighth Amendment purposes between a sentence of life imprisonment and one of death, a distinction emphasized by Justice Brennan in the landmark case of *Furman v. Georgia*, 408 U.S. 238, 290, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring). Simply stated,

526

the Eighth Amendment requirement for individualized consideration of offender and crime in capital cases has not been extended to noncapital offenses.

■ Determinations regarding the appropriateness of individualized sentencing for noncapital cases are within the province of the legislature. For first-degree murder, where the death sentence is not applicable, our legislature has seen fit to impose a mandatory life sentence, choosing to deny the judiciary the discretion allowed in sentencing many other types of offenders. Its decision to do so does not violate the United States or Pennsylvania Constitutions.

Nor are the equal protection clauses of the United States and Pennsylvania Constitutions violated by the legislature's decision to preclude consideration of individual characteristics. The legislature, in enacting this statute, has given all offenders in noncapital first-degree murder cases the same punishment: the removal of the offender from society for the remainder of his life. This is constitutionally valid.

We therefore affirm the judgment of sentence.

BECK, J., concurred in the result.