J-A31027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYLER MITCHELL BRADSHAW | |
| Appellant | No. 114 MDA 2015 |

Appeal from the Judgment of Sentence December 16, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003479-2012

BEFORE: PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED NOVEMBER 16, 2015**

Tyler Mitchell Bradshaw appeals from the judgment of sentence, entered in the Court of Common Pleas of Cumberland County, after a jury trial in which he was convicted of second-degree murder,[1] robbery,[2] and conspiracy to commit these crimes.[3] Upon review, we affirm.

The trial court summarized the facts of this matter as follows:

> On November 18, 2012, between approximately 10:00 and 11:00 p.m., Sergeant Todd Lindsay of the Silver Spring Township Police Department was dispatched to the Hess Station at 7034 Carlisle Pike, Silver Spring Township, Cumberland

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(b).

[2] 18 Pa.C.S. § 3701(a)(1)(i).

[3] 18 Pa.C.S. § 903.

County. Upon arriving at the Hess Station, Sergeant Lindsay was directed behind the counter where he found Linda Ness, the store clerk, with blood on her face. Paramedics arrived at the Hess Station shortly after Sergeant Lindsay, and Miss Ness was determined to be deceased.

In an effort to determine the circumstances which led to Miss Ness's death, Sergeant Lindsay reviewed a soundless surveillance video. The video, according to Sergeant Lindsay, shows an individual entering the Hess Station. The individual briefly engages in conversation with someone off to his right, presumably Miss Ness, and then leaves the store. Shortly thereafter, two individuals dressed in black, wearing masks and gloves, enter the store. They approach the counter with one behind the other. The individual closest to the counter lifts up his shirt with his right hand [and] pulls a gun from his waistband with his left hand. Although Miss Ness is not fully visible in the video at this point, the tips of her fingers come into view. He then proceeds to point, either at the register or at Miss Ness, with his finger and then with the gun, alternating between the two. Miss Ness then suddenly collapses to the ground and the two individuals leave the store.

On November 20, 2012, an autopsy was performed on Miss Ness by Dr. Johnson, a forensic pathologist, at the Lehigh Valley Medical Center. During the autopsy, three bullet fragments were recovered from Miss Ness, and Dr. Johnson determined that the cause of death was a single gunshot wound to the neck and chest.

Officer Seth Weikert, Silver Spring Township Police Department, and Detective Les Freehling of the Cumberland County Criminal Investigation Division interviewed co-defendant Shante Rice. Mr. Rice explained that he was the first individual seen on the video surveillance to enter the Hess Station and that, after leaving the store, he passed the two individuals that next entered the store. Mr. Rice admitted providing the gun to the shooter approximately an hour before the shooting. Mr. Rice said that he and three other individuals planned the robbery at the Hess Station approximately five minutes before stopping there.

[Bradshaw] also was interviewed as a suspect. That interview was conducted by the lead investigator, Detective Jared Huff of the Silver Spring Township Police Department, and Detective

Richard Keefer of the Cumberland County Criminal Investigation Division. [Bradshaw], like Mr. Rice, admitted that he and three other individuals discussed robbing the Hess Station on the Carlisle Pike prior to arriving there. He also admitted that he and one of the other three individuals entered the Hess Station together, with [Bradshaw] entering first. Once inside, [Bradshaw] approached the counter and pointed a gun at Miss Ness, telling her to turn around and get the money. He then shot Miss Ness, fatally injuring her. According to [Bradshaw], the gun just went off. After Miss Ness collapsed, [Bradshaw] and the other individual left the store empty handed.

Trial Court Opinion, 3/26/15, 2-4.

Bradshaw was convicted on September 11, 2014 and sentenced on December 16, 2014. In addition to a sentence of life imprisonment for second-degree murder, the court imposed concurrent sentences of ten to twenty years' incarceration for conspiracy to commit murder, and five to ten years' incarceration each for robbery and conspiracy to commit robbery. This timely appeal followed.

On appeal, Bradshaw raises the following issues for our review:

[1.] The trial court erred by failing to instruct the jury that [first-degree murder] and [second-degree murder] carr[y] the same penalty when the death penalty is withdrawn.

[2.] The trial court erred in not allowing sufficient cross-examination of the co-defendants [who] testified against [Bradshaw] under a "deal" for a lesser offense.

Brief of Appellant, at 7.

In his first issue, Bradshaw claims that the trial court erred by not instructing the jury that the penalty for first-degree or second-degree murder would be identical in his case. Our standard of review regarding jury instructions involves deference to the trial court, and we will reverse the

court's decision only if it abused its discretion or committed an error of law. **Commonwealth v. Galvin**, 985 A.2d 783, 798-99 (Pa. 2009).

We note that in order to preserve a claim regarding erroneous jury instructions, a specific objection must be made at trial. **Commonwealth v. Parker**, 104 A.3d 17, 29 (Pa. Super. 2014) *appeal denied*, 117 A.3d 296 (Pa. 2015); **see** Pa.R.Crim.P. 647(C) ("No portion of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."). Indeed, "the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge." **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005). Even if an appellant objects to an instruction during the charging conference, this Court has found the issue waived if there is no objection after the actual instructions have been given. **See Parker**, **supra**, at 29.

Instantly, the record reveals that during the charging conference, Bradshaw's counsel requested a jury instruction indicating that the penalty for first-degree or second-degree murder would be identical in this matter. The court denied this request, to which counsel indicated that "[he would] make an objection." N.T. Trial, 9/10/14, at 194. However, after the jury was given instructions, which did not include the requested instruction

regarding penalties, Bradshaw's counsel did not raise the issue again. Thus, this issue is waived.[4] ***Pressley***, ***supra***; ***Parker***, ***supra***.

Bradshaw next asserts that the trial court did not permit adequate cross-examination of his co-defendant, Brandon Mathna,[5] regarding a plea agreement he may have made with the Commonwealth. "The scope and the manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion." ***Commonwealth v. Nunn***, 947 A.2d 756, 761 (Pa. Super. 2008). The scope of cross-examination generally includes "inferences, deductions, or conclusions which may be drawn therefrom, which explain or destroy the effect of direct testimony." ***Id.*** at 762. In particular,

> [when] a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, *must* be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if

---

[4] Moreover, even if counsel had preserved this issue, we note that the argument that the instruction should have been permitted is without merit, since "[p]unishment is a matter solely for the court and not for the jury to know or to consider during its deliberations." ***Commonwealth v. Waters***, 483 A.2d 855, 860 (Pa. Super. 1984) (citing ***Commonwealth v. Lucier***, 225 A.2d 890 (Pa. 1967)).

[5] Bradshaw states the issue as objecting to limits on the cross-examination of two co-defendants, Christian Conway and Mathna. However, argument has been developed only as to Mathna. Moreover, counsel stated that he was satisfied with what he was able to elicit during cross-examination of Conway. ***See*** N.T. Trial, 9/9/14, at 100.

the witness presently testifies in a way that is helpful to the prosecution. [I]f that possibility exists, the jury should know about it.

***Commonwealth v. Smith***, 647 A.2d 907, 912 (Pa Super. 1994).

Bradshaw's counsel had the following exchange with Mathna:

[By Mr. Abeln:]

Q: What -- what promise or anything did you get from the Commonwealth to have you come here today and tell them what you say is true?

A: I have just come here so maybe after this I could have some leniency in my overall --

Q: All right. Let's talk about that. What -- what do you describe as leniency?

A: Less than what the total end could be.

Q: Less than what?

A: My total sentence could be.

Q: Less than what your total sentence could be?

A: Yeah. Like, the maximum.

. . .

Q: What did [First Assistant District Attorney] Keating tell you if you testified today or whoever from the District Attorney's Office?

A: Just that if I do this that they may -- might show me mercy in the end when my time comes to be sentenced.

Q: Did you ask him what mercy meant?

A: Just as I said, not the maximum sentence, like, the overall, the main I can get.

N.T. Trial, 9/9/14, at 134-35. Counsel next asked Mathna what he thought the maximum sentence would be, to which the Commonwealth objected.

- 6 -

The Court sustained the objection as to the form of the question, and provided the following guidance:

> The Court: . . . You may ask if he was promised a specific length of the sentence or a general ballpark of what his sentence would be. Length.
>
> You may not get into anything that includes what the penalties, maximum penalties are for the offenses that are charged. And you are not to be leading down that direction to elicit that. You have already taken that bite once or twice.

*Id.* at 138-39. Counsel resumed questioning Mathna:

> By Mr. Abeln:
>
> > Q: I'm going to clarify my last question to you. Were you promised anything by the Commonwealth as to what the length of your sentence would be if you testified?
> >
> > A: No.
>
> Mr. Abeln: Okay. That's all I have, Your Honor.

*Id.* at 140.

Bradshaw argues that the maximum penalty was relevant for the purpose of impeaching Mathna and should have been permitted to be discussed during the above exchange. However, as the trial court noted:

> In the absence of an agreement between Mr. Mathna and the Commonwealth, the maximum penalty for the charges against Mr. Mathna was not pertinent to Attorney Abeln's attempt to impeach Mr. Mathna's credibility. The maximum penalty may have been relevant had Mr. Mathna already entered into an agreement with the Commonwealth for a particular sentence as it would have informed the jury as to the extent and generosity of that agreement. . . . Additionally, by circumscribing Attorney Abeln's questioning of Mr. Mathna, we wished to insure that he did not attempt to circumvent our ruling excluding reference to the potential penalties faced by [Bradshaw] by introducing those penalties through the testimony of Mr. Mathna.

- 7 -

Trial Court Opinion, 3/26/15, at 11.

The trial court correctly notes that Mathna had no specific agreement with the Commonwealth that would have made a maximum penalty relevant in comparison to the length of his sentence. Moreover, the jury was permitted to hear testimony of the possibility that Mathna could receive leniency in his sentence, as mandated in **Smith**, **supra**. Finally, the trial court's decision to curb testimony to avoid the introduction of specific penalties is also sound. **Waters**, **supra**. Thus, we discern no error in the trial court's rulings during Mathna's cross-examination.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/16/2015