J-S04042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN VINCENT WATERS | : | |
| | : | |
| Appellant | : | No. 99 MDA 2018 |

Appeal from the Judgment of Sentence December 4, 2017
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0000893-1981

BEFORE:   SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 01, 2019**

Appellant, John Vincent Waters, appeals from the December 4, 2017, judgment of sentence entered in the Court of Common Pleas of Cumberland County following the trial court's grant of PCRA[1] relief and resentencing of Appellant on, *inter alia*, his first-degree murder conviction pursuant to **Montgomery v. Louisiana**, ___ U.S. ___, 136 S.Ct. 718 (2016), which held that state courts are required to grant retroactive effect to new substantive rules of federal constitutional law, such as **Miller v. Alabama**, 567 U.S. 460, 132 S.Ct. 2455 (2012).  **Miller** held unconstitutional mandatory sentences of life imprisonment without the possibility of parole for offenders, like Appellant,

_____

[1] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

_____
*   Former Justice specially assigned to the Superior Court.

who were under eighteen years of age at the time of their crimes. After a careful review, we affirm.

The relevant facts and procedural history are as follows:

On October 14, 1981, the body of an eleven-year-old boy, Steven Turner, was found stabbed and bludgeoned to death in an abandoned farmhouse within a mile of his home in Cumberland County, Pennsylvania. The body, covered by stones and boards, was discovered in the evening as a result of a search for the boy which commenced when he did not come home for dinner.

An autopsy revealed that the 4 foot 9 inch, 80 pound sixth grader had died as a result of multiple head injuries. He had sustained a massive fracture of the skull from blows to the back and the side of the head, a broken jaw on each side of the face, a stab wound to the back of the neck and a stab wound to the back of the chest. He had also been subjected to a post-mortem incise wound on the right wrist and stab wound in the front of the neck. The blade of a knife, with its handle broken off, was left in the victim's neck. The autopsy report also indicated that sperm was present in the victim's mouth.

[A]ppellant…a 152 pound, sixteen-year-old, 5 foot 8 inch high school student told police during an original canvass of the neighborhood, that he had last seen the victim on the afternoon he disappeared. He told the police that he had observed the victim getting into an unknown car, which subsequently drove out of the development.

As a result of a further canvass of the neighborhood, the police obtained a steak knife from [A]ppellant's mother. The knife, which she had in her house, matched the one found at the murder scene including the blade which had been left in the victim's throat.

On October 25, 1981, the police requested that [A]ppellant and his father report to the municipal building for questioning concerning the homicide. [A]ppellant was given the **_Miranda_** warnings in the presence of his father. Thereafter he and his father consulted with each other. [A]ppellant waived his rights and agreed to speak to the police without having his father present. His father had no objection to such an interrogation.

- 2 -

During the course of the questioning, [A]ppellant made an inculpatory statement, admitting that he had engaged in oral intercourse with the victim and then had killed him.

**Commonwealth v. Waters**, 483 A.2d 855, 857-58 (Pa.Super. 1984).

On September 23, 1982, a jury convicted Appellant of first-degree murder, 18 Pa.C.S. § 2502(a), and involuntary deviate sexual intercourse ("IDSI"), 18 Pa.C.S. § 3123. On January 25, 1983, the trial court sentenced Appellant to life in prison without the possibility of parole for first-degree murder, as well as a concurrent term of four years to ten years in prison for IDSI. This Court affirmed Appellant's judgment of sentence on October 12, 1984. **Waters**, **supra**. The United States Supreme Court denied Appellant's writ of certiorari on June 3, 1985. **Waters v. Pennsylvania**, 471 U.S. 1137 (1985).

On July 14, 2010, Appellant filed a pro se PCRA petition, and following the appointment of counsel, the PCRA court denied the petition as untimely. This Court affirmed. **Commonwealth v. Waters**, No. 71 MDA 2011 (Pa.Super. filed 8/16/11) (unpublished memorandum).

On July 3, 2012, Appellant filed a second pro se PCRA petition, and following the lower court "staying" the matter, Appellant's counsel filed an amended PCRA petition on behalf of Appellant. Counsel argued that Appellant was entitled to relief under **Montgomery**, **supra**, and **Miller**, **supra**. By order entered on February 3, 2016, the PCRA court granted relief based on the "new constitutional right" exception to the PCRA's time-bar.

- 3 -

On November 13, 2017, and December 4, 2017, Appellant, still represented by counsel, proceeded to resentencing hearings, at the conclusion of which the trial court resentenced Appellant to 35 years to life imprisonment for first-degree murder, as well as a consecutive term of four years to ten years in prison for IDSI. Appellant filed a timely, counseled motion to modify his sentence, which the trial court denied on December 15, 2017. Thereafter, Appellant's counsel filed a petition to withdraw, which the trial court granted. The trial court appointed the Public Defender's Office to represent Appellant.

This timely, counseled appeal followed, and on January 11, 2018, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement. Despite being represented by the Public Defender's Office, Appellant filed a *pro se* Pa.R.A.P. 1925(b) statement, as well as a request to proceed *pro se.* The trial court scheduled a hearing pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998); however, the trial court filed an order on March 2, 2018, indicating that Appellant retained new private counsel such that a **Grazier** hearing was unnecessary. Following counsel's motion to file an amended Pa.R.A.P. 1925(b) statement, which the trial court granted, counsel filed a Pa.R.A.P. 1925(b) statement on April 6, 2018. The trial court filed a responsive Pa.R.A.P. 1925(a) opinion on May 30, 2018.

In his first issue, Appellant contends that, upon resentencing in 2017, the trial court imposed an illegal sentence when it failed to impose his sentence for IDSI concurrently to his sentence for first-degree murder, such

as it did when Appellant was originally sentenced in 1983. Alternatively, he suggests the trial court did not have the authority to resentence him on his IDSI conviction in 2017 but had the authority to resentence him only on his first-degree murder conviction. Appellant contends the trial court's resentencing with consecutive sentences impermissibly "enhanced [his] punishment." Appellant's Brief at 15. Consequently, Appellant contends that the trial court's resentencing of Appellant as it relates to his IDSI conviction violated the constitutional provisions prohibiting double jeopardy.

Resentencing to correct an illegal sentence does not, in and of itself, implicate double jeopardy. **See Commonwealth v. Kratzer**, 660 A.2d 102 (Pa.Super. 1995). "If a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated so that the court can restructure its entire sentencing scheme." **Commonwealth v. Bartrug**, 732 A.2d 1287, 1289 (Pa.Super. 1999). Here, Appellant intentionally upset the finality of his judgment of sentence by challenging it collaterally through his PCRA petition. We conclude that the PCRA court did not err in vacating Appellant's entire sentence before resentencing, rather than just the illegal sentence for Appellant's first-degree murder conviction. **See id.** Additionally, as the trial court noted, "it was wholly appropriate for the court to resentence [Appellant] on both charges regardless of the structure of the original sentence." Trial Court Opinion, filed 5/30/18, at 6.

Moreover, we note that, despite the imposition of consecutive sentences upon resentencing, Appellant was resentenced to a lower aggregate term of incarceration. For instance, in 1983, Appellant was sentenced to an aggregate of life in prison without the possibility of parole; however, upon resentencing in 2017, Appellant was sentenced to an aggregate of 39 years to life with the possibility of parole.[2] Thus, under such circumstances, we reject Appellant's claim that a double jeopardy violation occurred.[3] *See Kratzer*, *supra* (holding the constitutional provisions prohibiting double jeopardy do not prevent the imposition of consecutive sentences upon remand where the original sentences were concurrent; where the aggregate term of imprisonment did not increase upon resentencing, there was no double jeopardy violation); *Commonwealth v. Sutton*, 583 A.2d 500, 502–03 (1990) (declaring that "no double jeopardy violation is implicated where the aggregate sentence upon resentencing does not exceed the original aggregate sentence") (citation omitted)).

_____

[2] Also, as the trial court explained, "given the mandatory sentence of life without parole, there was no reason in 198[3] for the sentencing court to structure a sentence with anything other than a concurrent sentence on the IDSI charge." Trial Court Opinion, filed 5/30/18, at 6.

[3] We note that, in its written sentencing order on December 4, 2017, the trial court gave Appellant credit for 13,190 days of time served. Therefore, practically speaking, Appellant will not suffer "multiple punishments for the same offense." *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260 (1980) (stating that double jeopardy "protects against multiple punishments for the same offense") (internal citations, quotation marks, and some brackets omitted)).

In his second issue, Appellant contends that statements made by the trial court in its Pa.R.A.P. 1925(a) opinion demonstrate that the trial court's imposition of consecutive sentences upon resentencing was the result of actual judicial vindictiveness. This presents a challenge to the discretionary aspects of Appellant's sentence. *See Commonwealth v. Barnes*, 167 A.3d 110 (Pa.Super. 2017) (*en banc*).

We have long held that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Id.* at 122 (citation omitted). Instead, such challenges are considered petitions for allowance of appeal. *Id.* Generally, an appellant who wishes to challenge the discretionary aspects of his sentence must satisfy a four-part test to invoke this Court's jurisdiction:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appeal from is not appropriate under the Sentencing Code.

*Id.* (citation omitted). Finally, "[w]hether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis." *Id.* (citation omitted).

Here, Appellant filed a timely notice of appeal, but he did not present his issue during sentencing or in his post-sentence motion. However, since Appellant's issue, as framed, relates solely to statements made by the trial court for the first time in its Rule 1925(a) opinion, we decline to find waiver

on this basis.[4] We note Appellant included a separate statement in his brief pursuant to Pa.R.A.P. 2119(f), and a claim of judicial vindictiveness following resentencing raises a substantial question. *See Barnes*, *supra*. Hence, we will consider the substantive merits of Appellant's sentencing claim.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (quotation omitted).

Generally, a presumption of vindictiveness arises if the court imposes a harsher sentence upon resentencing. *Commonwealth v. Robinson*, 931 A.2d 15, 22 (Pa.Super. 2007) (*en banc*). *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201 (1989) (holding that when a defendant is resentenced and receives a greater sentence than that which was originally ordered, the possibility that judicial vindictiveness motivated the increased sentence may implicate the due process concern that defendants will be chilled from exercising their appellate rights). "Absent evidence [that]

---

[4] For similar reasons, we also decline to find Appellant's claim waived for failing to raise it in his Rule 1925(b) statement.

a sentencing increase is justified due to objective information concerning a defendant's case, the presumption of vindictiveness cannot be rebutted." ***Barnes***, 167 A.3d at 124. Significantly, no presumption of vindictiveness arises when the original sentence and the new sentence are imposed by two different judges. ***Commonwealth v. Tapp***, 997 A.2d 1201, 1205 (Pa.Super. 2010). Without a presumption of vindictiveness, the defendant must affirmatively prove actual vindictiveness. ***Id.*** When a defendant fails to prove vindictiveness by affirmative evidence, his right to due process has not been infringed, and he is not entitled to resentencing on that ground. ***Id.***

In developing his issue of actual vindictiveness,[5] Appellant points this Court to the following portion of the trial court's Pa.R.A.P. 1925(a) opinion:

> In closing, I will dispense with the distance and decorum of the third-person voice, a tool we judges use far too often. Likewise, I will dispense with the neutral appellation of "defendant." I do so to note my displeasure with this appeal, and to let Mr. Waters know that I am not standing behind any trappings of privilege. I do not disapprove of Mr. Waters exercising his right of appeal, but the tone and manner in which he did so was troubling. No doubt, Mr. Waters was frustrated by not being released. Nevertheless, in the cool light of morning, he lashed out with a condescending, entitled, and near-maniacal

---

[5] As indicated *supra*, Appellant did not receive a greater sentence upon resentencing. Further, the Honorable Dale F. Shughart imposed Appellant's original sentence whereas the Honorable Albert H. Masland imposed Appellant's new sentence. Accordingly, there is no presumption of vindictiveness and, as Appellant acknowledges, he must affirmatively prove actual vindictiveness. ***See Tapp***, ***supra***.

missive to dismiss the abilities of the Public Defender and my reading of the law.[6]

Although I am disturbed by this attitude, ironically, it is reassuring. In short, it confirms the hesitation that led me to impose consecutive sentences. Not only did I believe that the facts warranted consecutive sentences, but also, I sensed that Mr. Waters was not ready to be released-for his wellbeing or the public's. I may be wrong on the law, but I was not wrong to impose a sentence that ensured Mr. Waters had a few more years to ponder his crimes.

Should Mr. Waters be fortunate enough to be released on parole, I remind him, "[a] 'parole' is not an act of clemency obliterating the crime or forgiving the offender…." *Commonwealth ex rel. Forsythe v. Myers*, 189 A.2d 920, 921 (Pa.Super. 1963) [(*en banc*)]. Steven Turner will always be his victim. Steven's sisters, Sherise McMichael and Melissa Vaccaro, will always be his victims. And, in a more abstract sense, the community will always be his victim, as evidenced by the outpouring of public support for his continued incarceration. I implore Mr. Waters, during his incarceration and during any potential future liberty on parole, to remain cognizant of the effect his actions, legal or otherwise, have on the emotional wellbeing of his victims, and to temper his actions accordingly.

Trial Court Opinion, filed 5/30/18, at 7-8 (footnote added).

Appellant reasons the trial court's statements demonstrate that the trial court imposed consecutive sentences to punish Appellant for challenging his original sentence, thereby ensuring his parole is delayed. We disagree with Appellant that the trial court's statements, which were made in its advisory Rule 1925(b) opinion, evidence actual vindictiveness in imposing consecutive sentences. Rather, the trial court's statements reflect the court's confirmation

---

[6] It is unclear as to precisely what action or statements to which the trial court is referring.

that it imposed a sentence in accordance with the dictates of 42 Pa.C.S.A. § 9721, which requires a trial court, in imposing a sentence, to consider the protection of the public, the gravity of the offense in relation to the impact on the victim and community, and the rehabilitative needs of Appellant. The trial court specifically indicated it did not disapprove of Appellant exercising his rights; but rather, the trial court noted that Appellant's "condescending, entitled, and near-maniacal" attitude required comment. **See** Trial Court Opinion, filed 5/30/18, at 7. We find no evidence of actual vindictiveness, and thus, we reject Appellant's claim.

In his third issue, Appellant contends that, in imposing consecutive sentences, the trial court improperly placed undue emphasis on the nature of his crime while improperly considering his young age at the time of the crime, as well as his capacity for change, as aggravating factors. This presents a challenge to the discretionary aspects of Appellant's sentence. However, our review of the record reveals that Appellant did not present this claim in his post-sentence motion or raise the issue at sentencing.[7] Thus, Appellant has not preserved this specific issue for our review, and he is not entitled to relief. **See Commonwealth v. Rhoades**, 8 A.3d 912, 915 (Pa.Super. 2010) (stating that an appellant waives for appeal issues challenging the discretionary

---

[7] We note the trial court provided Appellant with his post-sentence and appellate rights. N.T., 12/4/17, at 42-43.

aspects of his sentence where he does not raise them at sentencing or in a post-sentence motion); Pa.R.Crim.P. 720.

In his final issue, Appellant contends the trial court's imposition of 35 years to life imprisonment for Appellant's first-degree murder conviction is an illegal sentence. Specifically, Appellant claims there is no authority for the trial court's sentence.

Appellant's claim presents a challenge to the legality of his sentence. "Issues relating to the legality of a sentence are questions of law. Our standard of review over such questions is *de novo* and our scope of review is plenary." **Commonwealth v. Cardwell**, 105 A.3d 748, 750 (Pa.Super. 2014) (brackets and ellipses omitted).

In **Miller**, **supra**, the United States Supreme Court held that the Eighth Amendment's prohibition on cruel and unusual punishment forbids the mandatory imposition of a life without parole sentence for a juvenile offender convicted of homicide.[8] Thereafter, in **Montgomery**, the Court held **Miller** announced a substantive rule of constitutional law that must be applied retroactively. **See Montgomery**, 136 S.Ct. at 736.

_____

[8] The High Court did not foreclose sentencing courts from ever imposing terms of life without parole upon juvenile offenders. **Miller**, **supra**. Instead, it required sentencing courts to consider a juvenile's immaturity and capacity for change, and to refrain from imposing a life without parole term except in extreme cases where the sentencing court determines that the juvenile is incapable of rehabilitation. **See id.** In any event, in the case *sub judice*, the trial court's new sentence permits parole.

- 12 -

In order to correct Pennsylvania's consequently unconstitutional sentencing scheme, the Legislature enacted 18 Pa.C.S.A. § 1102.1. The statute provides that offenders who were between the ages of fifteen and seventeen at the time of their crimes and convicted of first-degree murder after June 24, 2012, must be sentenced to a maximum term of life imprisonment. *See* 18 Pa.C.S.A. 1102.1(a)(1). The minimum term for that class of offender is 35 years. *See id.*

The new statute did not address the resentencing of juvenile offenders convicted of murder and sentenced to life without parole before June 24, 2012. However, the Pennsylvania Supreme Court held in *Commonwealth v. Batts*, 640 Pa. 401, 163 A.3d 410 (2017) ("*Batts II*"), that juvenile offenders for whom the sentencing court deems life without parole sentences inappropriate, "are subject to a mandatory maximum sentence of life imprisonment as required by section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]" *Id.* at 421. The Court found that in fashioning a minimum sentence, courts "should be guided by the minimum sentences contained in section 1102.1(a)[.]" *Id.* at 458. In doing so, the *Batts II* Court "expressly rejected the claim…that there is no legislatively authorized sentence for juveniles convicted of first-degree murder prior to 2012." *Commonwealth v. Melvin*, 172 A.3d 14, 21 (Pa.Super. 2017) (citation omitted).

Here, Appellant was convicted of first-degree murder and sentenced to life without the possibility of parole in 1983. Appellant was ultimately resentenced in 2017, following **Miller**, **Montgomery**, and **Batts II**, to 35 years to life imprisonment for his first-degree murder conviction.

We find that **Batts II** disproves Appellant's contention that the sentencing court lacked authority to impose a term of 35 years to life imprisonment for first-degree murder. **Batts II** explicitly directed courts to use 18 Pa.C.S.A. § 1102.1 as a guideline for resentencing juvenile offenders. Further, the Pennsylvania Constitution gives the Pennsylvania Supreme Court "the power to prescribe general rules governing practice, procedure and the conduct of all courts as long as such rules neither abridge, enlarge nor modify the substantive rights of any litigant[.]" **Batts II**, 163 A.3d at 449 (quoting Pa. Const. art. V, § 10). Thus, the trial court had the authority to resentence Appellant pursuant to **Batts II**. Further, **Batts II** required the court to sentence Appellant to a mandatory maximum of life imprisonment. **See id.** at 458. **See also Commonwealth v. Seskey**, 170 A.3d 1105, 1109 (Pa.Super. 2017). Accordingly, we find Appellant is not entitled to relief on this claim.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>03/01/2019</u>